### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SONEE CASSIDAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.** |
| | ) | |
| **ITT CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | **JURY DEMAND** |

### COMPLAINT

**I.    INTRODUCTION**

1.   This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Act of Congress commonly known as "The Civil Rights Act of 1964," 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (hereinafter "Title VII"), which provides for relief against discrimination, harassment and retaliation in employment on the basis of gender and/or sex. The Plaintiff seeks compensatory and punitive damages, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

**II.   JURISDICTION AND VENUE**

2.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4); 28 U.S.C. §§ 2201 and 2202,  42 U.S.C. § 2000e-5(f)(3) and  and 42 U.S.C. § 12133. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367.

3.    The unlawful employment practices alleged hereinbelow were committed by the Defendants within Cullman County, Alabama.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(g).

  4. The Plaintiff requests a jury trial on all issues pursuant to 42 U.S.C § 1981a.

## III. PARTIES

  5. Plaintiff, Sonee Cassiday, ("Plaintiff") is a female citizen of the United States, and a resident of the State of Alabama. Ms. Cassiday was an employee of the Defendant, ITT Corporation, during the relevant time period.

  6. Defendant, ITT Corporation ("ITT"), is an employer within the meaning of 42 U.S.C. § 2000e(a) and (b) and within the meaning of 42 U.S.C. § 1981. At all times relevant to this action, has employed at least fifteen (15) or more employees.

## IV. ADMINISTRATIVE EXHAUSTION

  7. The Plaintiff has satisfied all conditions precedent required pursuant to Title VII.

  8. On or about June 9, 2010, Plaintiff timely filed a charge of employment discrimination with the EEOC (Charge #420-2010-02222), in which she complained that the Defendants subjected her to discrimination based on her sex and retaliation in relation to the terms, conditions and benefits of her employment. Plaintiff amended her EEOC charge on or about September 30, 2010, alleging further discrimination, harassment and retaliation since the filing of her original charge.

  9. Plaintiff subsequently received authorizations to file a private action for the original charge and the amended charge and is filing this complaint within ninety (90) days of receiving those authorizations.

## V. STATEMENT OF FACTS AND CLAIMS

  10. Plaintiff re-alleges and incorporates by reference paragraphs 1-9 above with the same force and effect as if fully set out in specific detail hereinbelow.

11. Plaintiff began working for ITT Corporation on or about March 14, 2004, as Administrator Coordinator.

12. Before being hired permanently with ITT, Plaintiff worked through a temporary employment agency, Holland Employee Agency, which is no longer in existence.

13. From the beginning of Plaintiff's full-time employment, she was supervised by Gary Scheetz.

14. Sometime in late 2004 - early 2005, additional duties were added to Plaintiff's duties which had formerly been performed by J.R. Mitchell, as purchasing agent.

15. Plaintiff asked for a raise and to receive the title which would reflect her duties and was told by Scheetz that she made enough considering what other women in Cullman, Alabama made and that she should be grateful.

16. Plaintiff's pay never reflected the duties she performed and J.R. Mitchell's pay was not reduced when Plaintiff began performing some of his duties.

17. While Plaintiff worked at Procrast Foundry, Scheetz frequently requested that she stay and oversee the unloading of a truck, the loading of a truck, etc.

18. Even though Plaintiff was paid by the hour and was required to stay past her regular scheduled time, at some point, Scheetz refused to authorize overtime in violation of the FLSA.

19. Mr. Scheetz knew Plaintiff had a second job and had to leave work at 4:45 p.m. to be able to get to her second job on time.

20. On at least one occasion when Scheetz asked Plaintiff to stay late and she protested, Mr. Scheetz (who would not pay overtime) suggested that Plaintiff was not properly committed to her position at Procrast Foundry.

21. Scheetz made several comments on more than one occasion to Plaintiff about women in the workplace.

22. On more than one occasion, Scheetz remarked that Plaintiff made plenty as a woman and did not need to be paid any more.

23. Scheetz also commented that women should have been made to stay home and raise babies and that that was what was wrong with the world.

24. J.R. Mitchell was left in charge when Scheetz was absent. When he was acting manager, he routinely made sexist, foul comments about Plaintiff and other women in her presence.

25. Mitchell said that all of his friends married sluts because he (Mitchell) slept with them all in college on many occasions.

26. On one occasion, Mitchell slammed his phone shut and said to Plaintiff, "that stupid, fucking bitch," I can't believe how stupid she is. She spent $15,000.00 on lap band and then got pregnant," referring to one of his friend's wives.

27. Mitchell also told Plaintiff that she was a slut and to shut her fucking mouth when she complained about her work load, which in part was a result of her being given the purchasing function from Mitchell.

28. On one occasion, while Mitchell was acting manager, a former employee came in and requested a copy of a doctor's excuse.

29. When Mitchell saw that Plaintiff was giving the employee a copy of the medical excuse the employee requested, Mithcell said, "You stupid fucking bitch, he's going to sue us. You can't give him something out of his file."

30. When Sheetz came back to work, Plaintiff told Sheetz how Mitchell had treated her and spoke to her.

31. No action was taken against Mitchell, but Plaintiff was written-up even though there was no policy addressing the issue on personnel files and what the employee was and was not entitled to.

32. On more than one occasion, Plaintiff complained to Scheetz about Mitchell's vile, sexist comments but his response was to threaten Plaintiff's termination.

33. Prior to Plaintiff's discharge, Mr. Scheetz accused her of authorizing a truck to unload after he had instructed her not to accept the shipment.

34. When Plaintiff was informed of this by Human Resources, she was puzzled because although it was true that she had been told to refuse the order, she had not allowed the shipment to be unloaded. Plaintiff provided evidence to Human Resources that she did not authorize the offloading of the shipment.

35. Human Resources "investigated" Scheetz's allegations for some time, and Plaintiff subsequently received a disciplinary write-up.

36. Plaintiff believes that this proposed "write-up" was not substantiated and she believes Scheetz was making false allegations and discriminating against her at that time because his complaint was made up. Further, Plaintiff submits the write-up was in retaliation for complaining about her discriminatory pay and the sexual harassment.

37. Shortly before Christmas and before Plaintiff was terminated, Scheetz sent an e-mail to the personnel at Procast Foundry announcing that the plant would be closed the three days leading up to Christmas.

38. Scheetz did not send Plaintiff the e-mail but she became aware of it through talk at work.

39. Plaintiff informed Scheetz that since the plant was going to be closed that she intended to visit her parents in Florida and would plan to leave on December 26 and return to work in January.

40. Plaintiff told Scheetz this sometime near Thanksgiving. Scheetz did not object.

41. Scheetz, who because of his many and various illnesses was not at work a lot, (Plaintiff's unofficial calculations were that Scheetz missed 57 days in 2009) and because Plaintiff believed the plant would be closed the days before Christmas, she undertook to get everything in order and told Scheetz that she wished to go over the items she had completed for the year end business with him.

42. Scheetz informed Plaintiff that he was having surgery and would be out December 21 and December 22, but would be in on December 23 to go over everything with her so she would be ready for my trip.

43. On December 18, Scheetz reversed himself about plant closing as to certain random people.

44. Plaintiff was among the people whom Scheetz said needed to come to work.

45. During a December 18, 2009 meeting, four employees, including Plaintiff, were given tentative work schedules.

46. Scheetz told Plaintiff that the only day he may need her to work was Wednesday, December 30, 2009.

47. Scheetz asked permission to call her on her personal cell phone if she was needed at work, and Plaintiff granted him permission to call her on her cell phone.

48. After the meeting was over, Plaintiff again went to Scheetz and inquired about the schedule.

49. Plaintiff explained that coming in Wednesday would disrupt her annual Christmas trip to visit her parents in Florida.

50. Plaintiff asked Scheetz to consider using her Tuesday and Wednesday and she would cancel her Florida trip entirely.

51. Scheetz declined Plaintiff's offer to have her work both days and declared that he was not positive that he would even need her to work on Wednesday.

52. Scheetz again stated that he would call her on Tuesday, December 29th, if he needed her to work on Wednesday.

53. At the time, Scheetz told all four men to come in to work.

54. Jeffery Bennett did not come in and was not terminated.

55. On the day Bennett should have come in, Bennett called and asked Scheetz if it was alright if he did not show up, to which Scheetz said, "okay, have fun with your family."

56. Scheetz did not report to work on Wednesday, December 23rd as promised.

57. It was agreed that Plaintiff and Scheetz would review Plaintiff's year end responsibilities and "tie up any loose ends" on December 23rd so that she could keep her holiday plans to travel to Florida.

58. Scheetz did not even call in to report that he would not be working on that day.

59. At that time, Plaintiff contacted Kathy Ray, Human Resource Representative, and explained her predicament.

60. It was agreed that Plaintiff would drive south and if Gary Scheetz called Plaintiff on Tuesday, December 29th, that she would return home and report to work on Wednesday, December 30th.

61. Kathy Ray also stated to Plaintiff that she had an e-mail from Scheetz announcing that the plant operations would cease on December 23, 2009, and resume on January 4, 2010.

62. Plaintiff asked for a copy of that e-mail.

63. Kathy Ray declined Plaintiff's request for a copy of the e-mail stating that she could not send the e-mail because she was not at her desk.

64. Plaintiff was assured that her conversation with Kathy Ray would be reflected on that e-mail if there was any dispute regarding Plaintiff's absence.

65. Gary Scheetz never called Plaintiff on Tuesday, December 29th as per their agreement.

66. Instead at 4:30 pm on the 29th of December, Scheetz announced to those that were there that nobody needed to bring lunch on Wednesday, stating, "I plan to send Sonee out to pick up lunch for everyone."

67. At that time Gerald Shaffer reminded him that Plaintiff had gone south and that if he needed her to report to work, he would need to contact her cell phone.

68. Scheetz stated that Plaintiff's absence was "going to be a problem" and retreated to his office.

69. The work that Scheetz claimed Plaintiff was needed for was not her duties but those of Mitchell.

70. Gary Scheetz and Kathy Ray terminated Plaintiff for insubordination for disobeying a direct order to report to work on December 30, 2009 even though she was not insubordinate and even though a male was allowed to skip work.

71. Plaintiff's employment was terminated on January 18, 2010.

## COUNT I
## CLAIMS OF SEXUAL DISCRIMINATION AND HARASSMENT
## IN VIOLATION OF TITLE VII AGAINST DEFENDANT

72. The Plaintiff re-alleges and incorporates by reference paragraphs 1-71 above with the same force and effect as if fully set out in specific detail hereinbelow.

73. As discussed above, Plaintiff was wilfully and maliciously discriminated against by the Defendant, at least in substantial part, on the basis of her sex, female, in the terms, conditions and benefits of her employment including, but not limited to discipline, wages, assignments of job duties, and work conditions. Similarly situated men were not treated similarly.

74. As set out above, Defendant subjected Plaintiff to a hostile work environment based on her sex, female, and the conduct of Defendant was so severe or pervasive as to create a hostile working environment for the Plaintiff.

75. As set out above, during her employment, Plaintiff made several good faith based complaints opposing sexual discrimination and harassment.

76. The Defendant, as an employer of Plaintiff, failed to adequately promulgate, disseminate, and enforce a sexual harassment and/or discrimination policy with regard to Plaintiff and other employees of Defendant.

77.     The Defendant, as an employer of Plaintiff, failed to take any prompt and effective remedial action reasonably calculated to result in the prevention and/or remedy of the sexual discrimination of Plaintiff.

78.     The Defendant, as an employer of the Plaintiff, condoned and/or otherwise ratified the unlawful, discriminatory actions against Plaintiff.

79.     The Defendant thus has violated the proscriptions against sexual discrimination and harassment found in Title VII.

80.     The unlawful conduct of the Defendant as described above was done with malice and/or reckless disregard of and/or deliberate indifference to the Plaintiff's federally protected rights.

81.     The unwelcome sexual discrimination created an intimidating, oppressive, hostile and offensive work environment that interfered with Plaintiff's emotional and physical well being and her ability to do her work.

82.     The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

83.     Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT II
## CLAIMS OF RETALIATION IN VIOLATION
## OF TITLE VII AGAINST DEFENDANT

84.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-83 above with the same force and effect as if fully set out in specific detail hereinbelow.

85. As discussed above, Plaintiff was wilfully and maliciously retaliated against by the Defendant, at least in substantial part, on the basis of her sex, female,, in the terms, conditions and benefits of her employment including, but not limited to, discipline, wages, assignments of job duties, termination, and work conditions.

86. As set out above, during her employment, Plaintiff made several good faith based complaints opposing complaints of sex discrimination and harassment.

87. In response to Plaintiff's good faith complaints of discrimination, Plaintiff was unlawfully retaliated against in employment decisions in the area of job assignments, wages, termination, and other terms, conditions, and privileges of her employment where made in substantial part because of retaliation, including denial of insurance coverage for her son.

88. The Defendant, as an employer of the Plaintiff, condoned and/or otherwise ratified the unlawful, retaliatory actions against Plaintiff.

89. The Defendant thus has violated the proscriptions against retaliation found in Title VII.

90. The unlawful conduct of the Defendant as described above was done with malice and/or reckless disregard of and/or deliberate indifference to the Plaintiff's federally protected rights.

91. The unwelcome retaliation created an intimidating, oppressive, hostile and offensive work environment that interfered with Plaintiff's emotional and physical well being and her ability to do her work.

92. The Defendant's conduct as described above was so severe or pervasive as to create a hostile working environment which caused Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

93. The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

94 Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Grant Plaintiff a declaratory judgment holding that actions of Defendant, ITT Corporation, described herein above violated and continue to violate the rights of the Plaintiff as secured by Title VII.

2. Grant Plaintiff a permanent injunction enjoining Defendant FH Corp., it agents, successors, employees, attorneys and those action in concert with Defendant FH Corp. and on Defendant's behalf from continuing to violate Title VII.

3. Grant the Plaintiff an Order requiring the Defendants to make the Plaintiff whole by awarding her the position she would have occupied in the absence of sexual and racial discrimination, harassment and retaliation (or front pay), backpay (plus interest), compensatory, punitive, and/or nominal damages, and loss of benefits.

4. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted on this the 11th day of October, 2011.

                                                s/Ann C. Robertson
                                                Ann C. Robertson

OF COUNSEL:
WIGGINS, CHILDS, QUINN & PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama  35203
(205) 314-0500

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.

                                                s/Ann C. Robertson
                                                OF COUNSEL


**PLAINTIFF REQUESTS THIS HONORABLE COURT TO SERVE VIA CERTIFIED MAIL UPON THE DEFENDANT THE FOLLOWING : SUMMONS, COMPLAINT.**

**Defendant's Address:**
ITT Corporation
c/o C T Corporation System, Registered Agent
2 North Jackson Street
Suite 605
Montgomery, AL 36104

                                                s/Ann C. Robertson
                                              OF COUNSEL